## THE STATE v. DIERBERGER, *Appellant.*

1.   **Peace Officer :** APPOINTMENT : OATH OF OFFICE. One who has been duly appointed a deputy constable, but has not taken the oath of office or filed his appointment, as required by law, has the same authority to act as a peace-officer as if he had taken the oath and registered his appointment.

2.   ———: RIGHT TO ARREST : NECESSARY FORCE. An officer in endeavoring to make an arrest has the right to use all the force necessary to overcome all resistance, even to the taking of life ; and where he uses no more force than is necessary to then and there accomplish the arrest, he is guilty of no offense, although he kill the person he is attempting to arrest, or one aiding and assisting the latter in his resistance.

The State v. Dierberger.

3. ——— : ——— : ——— : MURDER : PRESUMPTION. Upon a trial for murder, where the issue is whether the defendant as an officer resorted to extreme measures in making an arrest and thereby unnecessarily killed the deceased, it' is error to instruct that from the simple act of the killing the law will presume murder in the second degree. The burden is on the state to show the use of extreme measures, and all the . circumstances surrounding the killing should be looked to to determine that question.

4. Criminal Law : INTENTIONAL HOMICIDE. An intentional killing without deliberation constitutes murder in the second degree, or manslaughter in the second degree under Revised Statutes, section 1243, or in the fourth degree under section 1250, or is justifiable homicide.

*Appeal from St. Louis Criminal Court.*—Trial before HON. J. L. THOMAS, Judge of the Twenty-Sixth Judicial Circuit.

REVERSED AND REMANDED.

THE defendant had been appointed a deputy constable but had not taken the oath or filed his appointment with the city register. His defense was that the homicide was justifiable, having been committed without resort to unnecessary force while attempting to arrest the deceased for a breach of the peace.

*C. P. & J. D. Johnson* and *Smith, Silver & Brown* for appellant.

(1) The instructions given by the court on the question of the force the defendant was authorized to use in arresting the deceased, are contradictory, and for this reason the judgment should be reversed. Contradictory and inconsistent instructions are grounds for reversal. *State v. Simms*, 68 Mo. 305 ; *State v. Mitchell*, 64 Mo. 191. (2) An affray (R. S., sec. 1509) having occurred in the presence of the defendant, he, as a constable, was authorized to preserve the peace and arrest the disturbers. *State v. Grant*, 76 Mo. 236 ; *State v. McNally*, 87 Mo. 652. And in preserving the peace and making the arrest, defendant, when resisted, had the right to use all the force necessary to effect such purpose, even to

taking the life of the deceased. Defendant's use of force was, therefore, not limited to that necessary for the defense of his own person, and the court erred in so instructing. R. S., sec. 1235 ; 4 Blackstone, 178 ; 1 East's Pleas of Crown, 307 ; Foster's Crown Law, 272 ; 1 Russell on Crimes [9 Am. Ed.] 892 ; 7 Bacon's Abridg. 209 ; 4 Stephen's Comm. 98 ; 2 Bishop's Crim. Law [11 Ed.] secs. 647, 650 ; 1 Wharton Crim. Law [8 Ed.] sec. 402 ; Barbour's Crim. Law, 35. We submit that *State v. McNally*, 87 Mo. 664, is in direct conflict with all the authorities, and should be overruled. (3) The instruction on murder in the second degree is erroneous in that it entirely ignores the fact that defendant was an officer and whether or not he committed the homicide "in lawfully keeping and preserving the peace." R. S., sec. 1235. The instructions should not ignore a material issue or a defense. *State v. Foley*, 12 Mo. App. 431 ; *State v. Johnson*, 76 Mo. 121. The instruction is also erroneous in that it declares that from wilful killing with a pistol the law presumes murder in the second degree. It omits the elements of "malice aforethought." As was said in *State v. Curtis*, "Where there is wilful killing without deliberation and not with malice aforethought, the offense is manslaughter." *State v. Curtis*, 70 Mo. 606. Being an officer, the presumption of doing his duty prevails. *Chandler v. Bailey*, 87 Mo. 644 ; *Barker v. Underwood*, 63 Mo. 384. The instruction is further erroneous in failing to state that the defendant is only required to repel such presumptions by a reasonable doubt as to his guilt. (4) The instruction given on manslaughter in the fourth degree is erroneous. It ignores the question whether or not the defendant wilfully or intentionally shot and killed the deceased. Unless he so did the killing, the offense is manslaughter in the fourth degree. *State v. Edwards*, 70 Mo. 480. (5) The court committed error in refusing to give the instructions as asked by the defendant. It particularly erred in its refusal of the fourth instruction. R. S.,

The State v. Dierberger.

sec. 1235 ; *State v. Eaton,* 75 Mo. 586 ; *State v. John-ston,* 76 Mo. 121 ; *State v. Palmer,* 88 Mo. 568.   (6) The defendant was entitled to an instruction on manslaughter in the second degree, based on Revised Statutes, section 1243.    The court must give an instruction on every grade of homicide disclosed by the evidence.    *State v. Banks,* 73 Mo. 592 ; *State v. Palmer,* 88 Mo. 568.

*B. G. Boone,* Attorney General, for the State.

(1)   The instruction in regard to the force defend-ant was authorized in using to effect the arrest of deceased is not erroneous.    The latter part of the instruc-tion which limits the authority of an officer attempting to arrest one for a breach of the peace, is a correct and proper explanation and modification of the general state-ment in the beginning of the paragraph as to the authority of "the officer to overcome all resistance even to the taking of life."   (2)   An officer is not justified in killing one merely because he resists arrest.    Some-thing more must be done by the person sought to be apprehended than mere resistance to authorize his being killed by the officer.    The rule clearly stated is as fol-lows :   If one liable to arrest puts in jeopardy the life of an officer attempting to arrest him, such an one may be killed and the act will be justifiable ; but mere resist-ance to arrest without endangering the life of the officer will not justify or excuse the killing.    The authorities cited by appellant, as well as those discussed in the minority opinion of this court, in *State v. McNally,* 87 Mo. 644, show that it is not the resistance to arrest that justifies or excuses a homicide committed by an officer, but there must be added to this resistance a reasonable or absolute necessity for the killing.    Bishop says : "If instead of flying, one sought to be arrested, stands and resists, the officer may press forward in his purpose, even though the case be not a felony ; and if, in pressing forward, he is obliged to take the life of the other as in

self-defense, he will be justified." 1 Bish. Cr. Proc. [2 Ed.] sec. 160; see also 1 Hale's P. C. 481 and cases under notes 4 and 5; 1 Whar. Cr. Law [8 Ed.] sec. 402. (3) There was no evidence that Horne, the deceased, resisted arrest. (4) The instructions are to be taken and construed as a whole. 80 Mo. 516. The jury were clearly, and as we think liberally, instructed as to the official character of defendant and his authority to preserve the peace; it was not necessary to repeat this in each instruction. The law presumes murder in the second degree from the killing with a pistol. *State v. Gassert*, 65 Mo. 352. The instruction for manslaughter in the fourth degree correctly defines that offense. R. S., sec. 1249. Instructions asked by defendant and refused by the court were properly refused because the law applicable to the case under the evidence was properly and fully declared by the court. *State v. Smith*, 80 Mo. 516.

BLACK, J.—The defendant stands convicted of murder in the second degree. This case was here before, and reference is made to the opinion of the court in 90 Mo. 369, for a general statement of the evidence. The contention now is that the instructions given do not present the law fairly applicable to cases where an officer kills one who is resisting an arrest.

John Horne, the deceased, and Joseph Jackson went to the front platform of the horse-car and there got into an altercation with the driver, which resulted in a scuffle, or, as most of the witnesses say, a fight. The conductor opened the front door and they fell into the car. Defendant, in the meantime, went to the front to check up the car, which was going down grade at a rate of speed dangerous to the passengers. The driver returned to his post and defendant returned to the inside of the car, and addressing himself to Jackson, said: "I am an officer, and I will arrest you," or "if you don't keep quiet, I will arrest you." At the same time, he caught

Jackson by the lapel of his coat. Jackson said : "If you are an officer I will go with you." Horne, the deceased, said : "No, Jackson, he is not an officer and he can't arrest you, and I don't give a d—n whether he is an officer or not, he can't take you." Jackson said : "All right, I won't go with him." Defendant then took out his pistol and held it up. Thus far there is no substantial conflict in the evidence.

Mrs. Horne, widow of John Horne, testified : "The conductor told defendant to put up his pistol ; he then caught hold of my husband and forced him to the front, down and half off of the seat ; defendant fired one shot through the window, and then put his arms around my husband's neck and fired the fatal shot."

Carroll, the conductor, testified : "Told defendant to put up his pistol ; he put down his arms ; Jackson struck me and I pushed him down ; did not see Horne or defendant when the first shot was fired ; they were separated and standing up when the defendant fired the second shot, which killed Horne ; defendant then jumped off the car ; I followed him and he pointed the pistol at me."

The defendant was examined and cross-examined at great length, and his testimony is to the effect that when the conductor told him to put up the revolver, and when he was in the act of doing so, Horne, the deceased, rushed forward on him, and that both Jackson and Horne struck him about the same time, forcing defendant down in the corner of the car ; that the fight continued from the inside of the car to its outside ; and then back on the inside, and that the second shot was fired on the inside of the car when the defendant and the deceased were clinched. During the contest, the defendant received a cut on the hand and one on the nose, both of which appeared to have been inflicted with a sharp instrument ; his face and eyes were badly bruised. There is much other evidence on the one side

and the other, but enough has been given to show its general scope and the different theories of fact.

The court told the jury that defendant was a peace-officer, and as such it was his right not only to command the peace but to enforce it, and to arrest any one committing a breach of the peace in his presence, and take him before the proper officer to be dealt with according to law. This direction is correct so far as it goes, but it should go further and state that defendant's authority to so act was the same as if he had taken an oath of office and registered his appointment.

This instruction goes on to say : " In doing this, he was authorized to use such force as was necessary to overcome all resistance, even to the taking of life, but while he was clothed with this authority it was his duty to so conduct himself as to prevent and not provoke a breach of the peace, nor had he the right to assault any one engaged in a breach of the peace, simply to punish him for what he might deem a violation of the law or an insult to him ; nor had he the right as a peace-officer to resent an insult conveyed by mere words. And in making an arrest for a breach of the peace, or preventing a breach of the peace, he was justified in repelling force by force until his object was accomplished, but in such case he had no right to resort to the use of a deadly weapon except in the necessary defense of his life or himself from great personal injury."

The first portion of this branch of the instruction presents the law favorably enough for the defendant. The latter part, however, nullifies the first part. The instruction taken as a whole and applied to the evidence makes the case on the part of the defendant stand on the ground of self-defense. This is made the more emphatic by subsequent portions of the instructions. It places an officer making an arrest on the footing of any other person who is assaulted. It is due to the trial court to say that it doubtless designed to so qualify the instruction as to make it conform with a remark made in *State*

*v. McNally*, 87 Mo. 644.    But the question is:    Does this instruction present a correct exposition of the law ?

Homicide is deemed justifiable when committed in the lawful defense of such person where there shall be reasonable cause to apprehend a design to commit a felony or to do some great personal injury and there shall be reasonable cause to apprehend immediate danger of such design being accomplished, or when necessarily committed in lawfully keeping or preserving the peace. R. S., sec. 1235.    This statute is declaratory of the common law and it at once makes a radical distinction between the two classes of cases.

Homicides committed for the advancement of public justice are :    First, where an officer, in the execution of his office, either in a civil or criminal case, kills a person that assaults or resists him.    *    *    *    But in all these cases, there must be an apparent necessity on the officer's side, viz., that the party could not be arrested    *    *    * unless such homicide was committed ; otherwise, without such absolute necessity, it is not justifiable.    4 Bla. Com. 178.

As to arrests for misdemeanors and breach of the peace, "it is not lawful to kill the party accused if he fly from the arrest, though he cannot be otherwise overtaken, and though there be a warrant to apprehend him.    *    *    *    But, as in case of felony, so here, if the officer meets with resistance and kills the offender in the struggle, he will be justified." 1 East Pleas of the Crown, 302.

"Amongst the acts done by the permission of the law, for the advancement of public justice, may be reckoned those of the officer, who, in the execution of his office, either in a civil or criminal case, kills a person who assaults and resists him.    The resistance will justify the officer in proceeding to the last extremity.    So that in all cases, whether civil or criminal, where persons have authority to arrest or imprison, and using the

proper means for that purpose, are resisted in so doing, they may repel force with force, and need not give back; and if the party making the resistance is unavoidably killed in the struggle, this homicide is justifiable. A rule founded in reason and public utility, for few men would quietly submit to an arrest if, in every case of resistance, the party empowered to arrest were obliged to desist and leave the business undone." 1 Russell on Crimes [9 Am. Ed.] 892.

Mr. Wharton says: "As a general principle, officers of the law, when their authority to arrest or imprison is resisted, will be justified in opposing force to force, even if death would be the consequence; yet, they ought not to come to extremities upon every slight interruption without a reasonable necessity. If they kill where no resistance is made, it will be murder; and the same rule will exist if they should kill a party after the resistance is over and the necessity has ceased, provided that sufficient time has elapsed for the blood to cool." 1 Wharton's Crim. Law [8 Ed.] sec. 402.

"When, as a general proposition, one refuses to submit to an arrest after he has been touched by the officer, or endeavors to break away after the arrest is effected, he may lawfully be killed, provided this extreme measure is necessary." Bish. Crim. Law, sec. 647.

"In misdemeanors and breaches of the peace, as in cases of felony, if the officer meets with resistance, and the offender is killed in the struggle, the killing will be justified." *Ib.* sec. 650.

Other text-books and cases are to the same effect, but we refrain from making further quotations and simply cite: Foster, 272; 7 Bacon's Abridg. 209; 4 Stephen's Com. 98, and Barbour's Crim. Law, 35.

These authors, ancient and modern, lay down the law in substantially the same terms. They show that the protection which an officer is entitled to receive is a different thing from self-defense. The officer, when making

an arrest, may, of course, defend himself, as may any other person who is assaulted; but the law does not stop here. The officer must of necessity be the aggressor; his mission is not accomplished when he wards off the assault; he must press forward and accomplish his object; he is not bound to put off the arrest until a more favorable time. · Because of these duties devolved upon him the law throws around him a special protection. As we said, in the recent case of *State v. Fuller*, *ante*, p. 165, his duty is to overcome all resistance and bring the party to be arrested under physical restraint, and the means he may use must be co-extensive with the duty.

The defendant was entitled to a plain instruction to the effect that he had a right, in endeavoring to make the arrest, to use all the force that was necessary to overcome all resistance, even to the taking of life, and if he used no more force than was reasonably necessary to then and there accomplish the arrest, then he should be acquitted. If the defendant attempted to arrest Jackson, and the deceased resisted the arrest, or aided and assisted Jackson in resisting the arrest, then deceased occupied no better ground than Jackson himself.

The evidence in this case does not tend to make out a case of deliberate killing, and there is therefore no use of incumbering the trial with instructions upon murder in the first degree.

The instruction as to murder in the second degree, among other things, states in substance that if defendant shot Horne, he is guilty of murder in the second degree, in the absence of proof to the contrary, and that it devolves upon defendant to repel that presumption unless it is repelled by evidence offered by the state. Like instructions have been approved where there was evidence of justification for the killing when accompanied with an instruction as to reasonable doubt as to the whole case (*State v. Alexander*, 66 Mo. 148), but

disapproved when not accompanied with a full instruction as to reasonable doubt. *State v. Wingo*, 66 Mo. 181.

Now, in this case, the defendant is guilty of no offense unless he resorted to extreme and unnecessary measures—unless he shot Horne when there was no reasonable necessity for so doing, in order to accomplish the arrest; whether he did resort to such extreme measures is the very first issue in this case. The burden of proof of this issue is on the state. Whilst in general it is perhaps proper enough to say that from the simple act of killing the law will presume that it was murder in the second degree, still we think such an instruction should not be given in this case. The case starts out with evidence tending to repel the presumption, namely, that defendant was an officer; that he attempted to arrest Jackson and that Horne interfered. The issue should go to the jury on all the evidence and not be divided up with presumptions. As before stated, the burden of proof is on the state to show the use of extreme measures, and in order to determine this it is necessary to look to all the circumstances surrounding the killing.

Since the killing in this case was intentional, it is one of justifiable homicide, murder in the second degree, or manslaughter in the second degree under section 1243, or in the fourth degree under section 1250. *State v. Edwards*, 70 Mo. 480; *State v. Curtis*, 70 Mo. 600; *State v. Watson*, 95 Mo. 412. Section 1243 seems to apply to those cases of unnecessary killing where the person killed was attempting to commit a felony or do some unlawful act and the killing occurred after the attempt had failed. Here the resistance to the arrest seems to have been one continuous struggle up to the time the second shot was fired; and we cannot see that it comes within that section. If the defendant is guilty of manslaughter, it is because of an intentional killing, but without malice aforethought, and is manslaughter in the

fourth degree under section 1250. We are, of course, not to be understood as saying that intentional killings only are included in that section.

The judgment is reversed and the cause remanded for new trial. RAY, J., absent; NORTON, C. J., dissents, the other judges concur.