THE STATE v. HARPER, Appellant.

Division Two, May 9, 1899.

1. **Manslaughter in Second Degree:** DEFINITION: STATUTE. The instruction defined "manslaughter in the second degree" as "the killing of a human being unnecessarily, while resisting an attempt by such human being to commit a felony." The evidence showed that the struggle between defendant's father and deceased was not only going on at the time defendant intentionally fired the fatal shot, but that deceased struck defendant's father one blow with a rail after the shot. *Held*, that, as the statute applicable to this case defines manslaughter in the second degree as the unnecessary killing of another,

State v. Harper.

either while resisting an attempt by such other to commit a felony, or do some other unlawful act *after such attempt shall have failed,* this instruction was error. Nor did this evidence authorize an instruction for manslaughter in the second degree.

2. **Resistance:** WHAT FORCE NECESSARY. A person resisting an attempt on the part of another to commit a felony, is .not required to determine with absolute certainty what force is necessary for that purpose, but he must not use any more force than shall seem to him to be reasonably necessary.

3. ———: ———: ASSAULT ON ONE'S FATHER. And the same rule obtains with respect to the quantum of force necessary to repel an assault on one's father.

4. **Manslaughter in Fourth Degree:** INSTRUCTION: VOLUNTARILY ENTERING DIFFICULTY. An instruction that made the defendant guilty of manslaughter in the fourth degree for shooting one who was assaulting his father, whether or not he knew that his father sought or brought on the difficulty, is erroneous. If his father and deceased were engaged in the difficulty when he appeared on the scene, he was justified in interfering in his behalf; and whether what he did could be justified on the ground of his necessary defense, would depend on the motive prompting the act and the circumstances under which it was done, and not upon the fact that his father may have voluntarily entered into the difficulty.

*Appeal from Dunklin Circuit Court.*—Hon. John G. Wear, Judge.

Reversed and remanded.

Ely & Kelso and J. L. Downing for appellant.

(1) The court erred in defining manslaughter in the second degree. R. S. 1889, sec. 3470; State v. Edwards, 70 Mo. 480. (2). The court erred in giving instruction numbered "3" at the request of the State on manslaughter in the second degree. (a) This instruction imposed upon defendant the duty of determining with absolute certainty what force was necessary to be used in resisting deceased, while the law justified him in using such force as it appeared to him from the surrounding circumstances to be reasonably necessary for that purpose. State v. Palmer, 88 Mo. 568;

State v. Hickman, 95 Mo. 322; State v. Dierberger, 96 Mo. 666; State v. Rose, 142 Mo. 427; Nichols v. Winfrey, 90 Mo. 403. (b) This instruction is also erroneous in telling the jury to determine what force was necessary for defendant to use. This court has repeatedly held that "defendant is entitled to have the jury apply the law to the facts, not as they appeared to the jury, but as they reasonably appeared to him." State v. Rose, 142 Mo. 428. (c) This instruction is erroneous in not going further in this: The jury should have been told that the defendant had the right to resist the deceased, not only in an attempt to commit a felony, but in an attempt "to do some other unlawful act." Sec. 3470, R. S. 1889; State v. Edwards, 70 Mo. 480. (d) The concluding part of this instruction is also erroneous in telling the jury to find the defendant guilty unless they found that such shooting was done by the defendant "under such circumstances as would have justified the father of deceased in, himself, having delivered the fatal shot." This is not the law and standing alone is very indefinite. The court nowhere told the jury under what circumstances the father would have been justifiable in firing the shot, and left the matter with the jury for them to say what the law would have been in the event that the father of defendant had fired the fatal shot. Besides deceased and father of defendant were already engaged in the difficulty when defendant appeared on the scene, and the law did not require him to stop to inquire who provoked the difficulty. State v. Linney, 52 Mo. 40; State v. Hickam, 95 Mo. 332. (3) The vice of the sixth instruction, given at the instance of the State, is that it does not go far enough. To it should have been added, "provided always that the son knew that his father had sought or brought on the difficulty." State v. Linney, 52 Mo. 40; State v. Hickam, 95 Mo. 332. (4) The court erred in refusing instruction numbered "1" asked by defendant, as it stated the law of the case and was not covered by any of the

instructions given.    State v. Young, 105 Mo. 640.    (5) The court erred in refusing instruction numbered "2" asked by the defendant, for the physical condition of the parties is always an element to be considered with the other circumstances in the case in determining the amount of force necessary to be used or the means that may be used.

EDWARD C. CROW, Attorney-General, for the State.

(1)    Under a decision in the case of State v. Dearburger, 96 Mo. 666, we think the instruction of the court on manslaughter in the second degree was correct.    State v. Watson, 95 Mo. 412; State v. Cassert, 56 Mo. 352; Evans v. State, 33 Ga. 4.    (2)    It is not ordinarily necessary for the court to define the language used in the instructions.    But even if such definition is necessary, in order for the defendant to avail himself of that objection he must call attention of the trial court to its failure to so define the terms and phrases he desires defined before the case is submitted to the jury.    And if he does not do this, he can not avail himself of it on appeal.    State v. Cantlin, 118 Mo. 111; State v. Rose, 142 Mo. 429; State v. Woods, 137 Mo. 6.    (3)    The third instruction given by the court is correct.    By the statute as by the common law the doctrine of self-defense extends to the defense of any person connected with the party assaulted in any of the domestic relations; the act of such person being construed and its lawfulness tested by the same rules applicable to the act of the party himself.    State v. Linney, 52 Mo. 42; 1 Hale, 484; Kelley's Crim. Law, sec. 523.    Where one has reason to apprehend immediate danger that a felony will be committed upon him he may use whatever force and violence are necessary to protect himself, and it is proper to so instruct the jury.    State v. Stockton, 61 Mo. 382.    But it is not enough that defendant thought he was in danger, but he must have had reasonable ground for so thinking.    State v. O'Connor, 31 Mo. 389.    Whether there

was reasonable cause for such apprehension is for the jury to determine. State v. Duncan, 116 Mo. 296; State v. Alley, 68 Mo. 124. The right to defend one's father is as great as the right of the father to defend himself and no greater. State v. Melton, 102 Mo. 684. This is all the third instruction stated and this was correct. Those circumstances which will justify or excuse a homicide where the assault is upon one's self, will also justify or excuse taking life in defense of a wife, husband, parent, child, master or servant. Alberty v. U. S., 162 U. S. 499; McClain's Crim. Law, sec. 313. All that instruction 3 does is to tell the jury that they are to judge whether there was reasonable cause for such apprehension of the commission of a felony upon the father at the time the defendant shot. This is the law. State v. Brown, 63 Mo. 439; State v. Alley, 68 Mo. 124.

BURGESS, J.—At the July term, 1898, of the circuit court of Dunklin county, the defendant was convicted of manslaughter in the second degree and his punishment fixed at five years' imprisonment in the penitentiary, under an indictment theretofore preferred by a grand jury of said county charging him with having at said county on the sixth day of April, 1897, shot and killed one Thomas Oden.

After unsuccessful motions for new trial and in arrest defendant appeals.

The homicide was committed on the sixth day of April, 1897, in Dunklin county. At that time Thomas Oden, Charles Hall, the defendant and his father, Starling Harper, all lived in the same neighborhood, Oden's home being about three quarters of a mile from Harper's, but at the time stated Oden was staying at his mother's, who lived about two miles from Harper's. On the day before the difficulty, deceased, Charles Hall and Louis Hall, his father and another man, called by the witnesses "Indian Doctor," on their road home from the town of Campbell in said county, arranged to send a challenge to the Harpers to meet them the follow-

ing Saturday on halfway ground, and they would "do them up," the deceased agreeing to carry the challenge.

On the morning of the difficulty, deceased, Charles Hall and a boy by the name of David Ramsey, went from the house of deceased to the house of Charles Hall about two miles distant, for the purpose of carrying some provisions and a man and his wife to Hall's house. There were two roads leading from the house of deceased to Hall's, one a direct route, the other not so direct leading by Harper's, and something near three-quarters of a mile farther. The road last named runs through the Starling Harper farm and was opened by him for his own convenience.

In going to Hall's house from Oden's on this occasion the parties took the direct route, but returned by the road leading by Harper's house, which is fenced upon both sides for about three hundred yards. In passing through the lane they overtook Starling Harper who was in the road walking in the same direction that they were going. When they overtook Harper he and Oden began quarreling, during which Harper said to him, "You are following that damned bacon thief around, are you?" Whereupon Oden invited him to go with him off of his, Harper's premises and settle the matter. Harper although near seventy-five years of age accepted the challenge, and when the parties reached the end of the lane they stopped, Oden then got off of the wagon on which he, Hall and Ramsey had been riding, and took from a fence near by a rail, and while Harper was striking at him with a hoe which he had in his hands, he struck Harper on the head or shoulder with the rail .

Defendant who was at work in a field near by hearing the parties quarreling, started to the assistance of his father Starling Harper and while on the way was handed a loaded shotgun by his mother. When he got within about twenty-five feet of the combatants deceased was in the act of striking old man Harper the second time with the rail, when Harper

observed defendant, and told him to shoot, whereupon defendant said to Oden, "I am going to shoot you;" and fired at him, the load entering the left side, from the effects of which he died on the same day.    In the meantime Charles Hall had also gotten off of the wagon, and was standing near by with an ax in his hand, and defendant turned the gun upon him, but did not shoot.

Oden struck Starling Harper one blow with the rail after the shot was fired.    He was not knocked down however during the encounter.

At the close of the testimony the court gave the jury over the objection of defendant the following instructions, at the request of and on behalf of the State:

"The indictment in this cause was filed on the 16th day of July, 1897, and charged the defendant with murder in the first degree.    According to the evidence adduced, however, it will be necessary for you to determine, in case you find the defendant guilty of any offense, whether the conviction should be for the specific offense charged, or for murder in the second degree, or manslaughter in the second degree, or for manslaughter in the fourth degree.

"Murder in the first degree is the killing of a human being willfully, deliberately, premeditatedly, and with malice aforethought.  Murder in the second degree has all of the elements of murder in the first degree excepting that of deliberation.

"Manslaughter in the second degree, for the purpose of this trial, is the killing of a human being unnecessarily, while resisting an attempt by such human being to commit a felony.

"Manslaughter in the fourth degree, for the purpose of this trial, will be explained in a subsequent instruction applied to this case.

"As used in defining murder 'willful' means intentional, as contra-distinguished from accidental. 'Deliberately' means, for the purpose of this trial, in a cool state of the

blood; that is, not in a heat of passion caused by some just provocation to passion.

" 'Premeditatedly' means thought of beforehand, any length of time, however short.

" 'Malice' does not mean spite or ill-will, but signifies an unlawful state of mind, such a state of mind as one is in when he intentionally does an unlawful act.

" 'Malice aforethought' means malice with premeditation; that is, that the unlawful act intentionally done was determined upon before it was executed.

"Bearing the foregoing in view, and considering it as a basis, the court submits to you the further instructions following:

"1. If you should believe and find from the evidence that at the county of Dunklin and State of Missouri, any time prior to the day on which the indictment was filed, the defendant, Jid Harper, in the manner and by the means specified in the indictment, shot and wounded the deceased, Thomas Oden, and shall further believe that such shooting was done willfully, deliberately, premeditatedly, and with malice aforethought, and shall further believe that on the same day the said Thomas Oden died at the said county of Dunklin in consequence of such shooting and wounding done by the defendant, you will find the defendant guilty of murder in the first degree.

"2.   If you shall find from the evidence that within the time and at the place specified in the preceding instruction the defendant in the manner and by the means specified in the indictment, shot and wounded the deceased, Thomas Oden, and shall further believe such shooting and wounding was done willfully, premeditatedly and with malice aforethought, but without deliberation, and shall further find and believe that on the said day of the said shooting the deceased died from the effects of such shooting and wounding at the

county of Dunklin and State of Missouri, you will find the defendant guilty of murder in the second degree.

"3.  If you shall find and believe from the evidence that at the county of Dunklin and State of Missouri, any time within three years prior to the day on which the indictment was filed in this cause, the defendant shot and wounded the deceased, Thomas Oden, and that the said Thomas Oden died on the same day from the effects of such shooting and wounding at the said county and State, and shall further find and believe from the testimony that such shooting was done by the defendant while said deceased was attempting to commit a felony upon and against the father of the said defendant, you will find the defendant guilty of manslaughter in the second degree, unless you further find and believe from the testimony that such shooting and wounding by the defendant was necessarily done, that is, unless you find from the testimony that it was necessary in order to prevent the deceased from committing such felony upon the person of the father of the said defendant and was also done under such circumstances as would have justified the father or deceased in himself having delivered the fatal shot.

"5.  But if the jury believe from the testimony that Starling Harper, the father of the defendant, provoked the quarrel with Thomas Oden, the deceased, or began the quarrel, with the purpose of taking advantage of the deceased and of taking his life or of doing him some great bodily harm, and that on said day named in the indictment, to wit, the 6th day of April, 1897, the said defendant shot the said Thomas Oden at the said county of Dunklin and State of Missouri, and that such shooting was done willfully, deliberately, premeditatedly and with malice aforethought, and that said Thomas Oden died from the effect of such shooting on the same day, at said county and State, then such homicide was not justifiable, however imminent the peril of the said Starling Harper may have become in consequence of an

attack made by him upon the said deceased, Thomas Oden, and under such circumstances the defendant is guilty of murder in the first degree.

"6.   But if the jury believe and find from the evidence that on the 6th day of April, 1897, at the county of Dunklin and State of Missouri, one Starling Harper, father of the defendant, Jid Harper, began the quarrel or provoked the difficulty with the deceased, Thomas Oden, or voluntarily entered into a difficulty with the said deceased, yet if they also believe from the evidence that this was done by the said Starling Harper without any felonious purpose, and that thereupon the deceased attacked the said Starling Harper, father of the said defendant, and that the said defendant was compelled in order to save the life of the said Starling Harper, or to save him from great bodily harm, to take the life of the said deceased, and that said defendant did under such circumstances shoot and kill said deceased at the county of Dunklin and State of Missouri within three years before the filing of the indictment in this cause, you will find the defendant guilty of manslaughter in the fourth degree.

"7.   You are the sole judges of the credibility of the witnesses and the weight of their testimony; and if you believe that any witness in the cause has willfully sworn falsely as to any material fact or matter testified to by such witness, you are at liberty to disregard or treat as untrue the whole or any part of the testimony of such witness.

"8.   Under the law the defendant is a competent witness in his own behalf, and you should take his testimony in account and give it such weight as you deem it entitled to receive in passing upon his guilt or innocence.   But in determining what weight you will attach to his testimony you may take into consideration the fact that he is the defendant in the cause testifying in his own behalf, and his interest in the result of this trial.

"9.   The court instructs you that the burden of proving the defendant guilty beyond a reasonable doubt rests upon

the State, and if upon the evidence considered as a whole the jury entertain a reasonable doubt as to defendant's guilt, you should give him the benefit of such doubt and find him not guilty, but a doubt to authorize an acquittal on that ground alone should, as stated, be a reasonable doubt, and one fairly arising from the evidence as a whole.   The mere possibility that the defendant may be innocent will not warrant you in acquitting him on the ground of reasonable doubt.

"10.   If you find the defendant guilty of murder in the first degree you will simply so state in your verdict.   You are charged with no responsibility with respect to the punishment for murder in the first degree.

"If you find the defendant guilty of murder in the second degree you will so state in your verdict and assess his punishment at imprisonment in the penitentiary for any term of years, not less than ten, that you may deem proper.

"If you find the defendant guilty of manslaughter in the second degree you will so state in your verdict and assess his punishment at imprisonment in the state penitentiary at such term as you may deem proper, not less than three years, and not more than five years.

"If you find the defendant guilty of manslaughter in the fourth degree, you will so state in your verdict and assess his punishment at imprisonment in the county jail not less than six months or by a fine not less than five hundred dollars, or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months."

At the request of and on behalf of the defendant, the court gave the following instructions:

"The court instructs the jury that the right to defend one's self or his parents against danger is a right which the law concedes and guarantees to all men.   Therefore, the defendant may have killed deceased, Oden, and be innocent of any offense against the law.

"If at the time he shot the deceased he had reasonable cause to apprehend on the part of deceased a design to do Starling Harper, defendant's father, some great personal injury, and there was reasonable cause for defendant to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger to his father he shot deceased, and at the time he did so he had reasonable cause to believe and did believe it necessary for him to shoot deceased to protect his father from such apprehended danger, then and in that case the shooting was not felonious, but was justifiable and you will acquit him.

It is not necessary to this defense that the danger should have been actual or real or that danger should have been impending and immediately about to fall on the father of defendant. All that is necessary is that defendant had reasonable cause to believe and did believe these facts. But before you acquit on the ground of defending his father against threatened danger you ought to believe defendant's cause of apprehension was reasonable.

"Whether the facts constituting such reasonable cause of apprehension have been established by the evidence you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause you can not acquit him on the ground of defense of his father, even though you may believe that defendant really thought his father was in danger."

Defendant also asked the following instructions:

"1. The court instructs the jury that the defendant is in law presumed to be innocent until his guilt is established by such evidence as will exclude every reasonable doubt; therefore, the law requires that no man shall be convicted of a crime until each and every one of the jury is satisfied by the evidence in the case, to the exclusion of every reasonable doubt, that the defendant is guilty as charged. So in this cause, if the jury entertain any reasonable doubt of

defendant's guilt, they should acquit him, or if they entertain any reasonable doubt as to whether he was excusable and justifiable in the acts complained of, if he committed them, they should acquit him. Or, if any one of the jury, after having consulted with his fellow jurymen, should entertain such a reasonable doubt, the jury can not in such case find the defendant guilty.

"2. The court instructs the jury that in considering the question of impending danger to the father of defendant they have a right to take into consideration in determining the reasonable cause of defendant to strike in his father's defense, the age and physical condition of the deceased, Starling Harper, defendant's father.

"3. You are further instructed that you are the sole judges of the weight of the evidence and the credibility of the witnesses in the cause, and if you believe any one of them has willfully sworn falsely as to any material fact in the cause, then you are at liberty to disregard the whole or any part of the testimony of any such witness."

Which said instructions numbers 1, 2 and 3, asked by the defendant, were by the court refused over the objection and exception of defendant.

It is claimed by defendant that the court erred in defining manslaughter in the second degree. By section 3470, Revised Statutes 1889, it is provided that every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or do any other unlawful act after such attempt shall have failed, shall be guilty of manslaughter in the second degree, and if defendant is guilty of manslaughter in the second degree it is under this section of the statute, for the only other section pertaining to manslaughter in that degree is the one next preceding it, which has no reference whatever to this kind of case.

The attempt to commit a felony had not failed according to the evidence, at the time the fatal shot was fired, and it is only where the killing of a person is unnecessary while resisting an attempt by such person to commit a felony, or do some other unlawful act after such attempt shall have failed, that the person committing the homicide is guilty of manslaughter in the second degree under this section. In passing upon this same statute in State v. Dierberger, 96 Mo. 666, it is said: "Section 1243 (R. S. 1879) seems to apply to those cases of unnecessary killing where the person killed was attempting to commit a felony or do some unlawful act and the killing occurred after the attempt had failed. Here the resistance to the arrest seems to have been one continuous struggle up to the time the second shot was fired; and we can not see that it comes within that section." So in the case at bar the struggle between defendant's father and the deceased was not only going on at the time the fatal shot was fired, but deceased struck him one blow with the rail thereafter. We are of the opinion, therefore, that the definition of manslaughter as given by the court is incorrect and erroneous.

It is clear from the evidence that the killing was intentional, and was therefore under the evidence murder in the second degree, or manslaughter in the fourth degree, unless justifiable. [State v. Edwards, 70 Mo. 480; State v. Curtis, 70 Mo. loc. cit. 600; State v. Watson, 95 Mo. 411; State v. Dierberger, *supra.*]

The third instruction given on the part of the State is criticised upon the ground that it imposed upon the defendant the duty of determining with absolute certainty what force was necessary to be used in resisting deceased, while the law justified him in using such force as it appeared to him from the surrounding circumstances to be reasonably necessary for that purpose. It is well settled that in resisting an attempt to commit a felony the person so resisting is not required to determine with absolute certainty what force is

necessary for that purpose, but it does exact of him that he shall not use any more force than shall seem to him to be reasonably necessary for that purpose. As was said by SHERWOOD, J., in State v. Palmer, 88 Mo. 568: "If the defendant acted in a moment of apparently impending peril, it was not for him to nicely gauge the proper *quantum* of force necessary to repel the assault of the deceased." [See, also, Nichols v. Winfrey, 79 Mo. 544; Morgan v. Durfee, 69 Mo. 469.] While in the case in hand the homicide was not committed in the defense of defendant's person, if it was committed in defense of his father the same rule obtains with respect to the *quantum* of force necessary to repel the assault of the deceased as if the assault had been committed on him personally.

The instruction was therefore erroneous, in that it imposed upon defendant the duty of determining with absolute certainty what force was necessary to be used in resisting the assault. It is bad for the further reason, that it is for manslaughter in the second degree, while the evidence did not authorize an instruction for that offense.

The sixth instruction given upon the part of the State is clearly erroneous for like reason. It was not absolutely necessary that defendant should have been compelled to take the life of Thomas Oden in order to save the life of his father or to save him from great bodily harm, to justify him in killing Oden, but if he had good reason to believe and did believe that his father was in impending peril then he was justified in using such force as it appeared to him from the surrounding circumstances to be reasonably necessary for the purpose of defending him against such peril.

It is also vicious in telling the jury that if Starling Harper began the quarrel, or provoked the difficulty with the deceased Thomas Oden, or voluntarily entered into a difficulty with the said deceased, yet if they also believe from the evidence that this was done by the said Starling Harper without

any felonious purpose, and that thereupon the deceased attacked the said Starling Harper, etc., and the defendant killed said Oden, etc., they would find him guilty of manslaughter in the fourth degree; thus making the defendant guilty of manslaughter in the fourth degree whether or not he knew that his father sought or brought on the difficulty, and is clearly erroneous. [State v. Linney, 52 Mo. 40.]

The evidence showed that when defendant appeared upon the scene, his father and deceased were engaged in the difficulty, while Charles Hall was present with an ax in his hand. He did not bring it on nor did he know who did. In the circumstances he had the right to interfere in behalf of his father, and whether what he did could be justified upon the ground of his necessary defense, would depend upon the motive prompting the act and the circumstances under which it was done, and not upon the fact that his father may have voluntarily entered into the difficulty. [State v. Hickam, 95 Mo. 322.]

No error was committed in refusing the first instruction asked by defendant. The matters presented by it were fully covered by the instructions that were given. The same may be said with respect to the second instruction asked by defendant and refused.

For these considerations we reverse the judgment and remand the cause. GANTT, P. J., and SHERWOOD, JJ., concur.