**74 P.2d 62**

**STATE v. VARGAS.**

**No. 4287.**

Supreme Court of New Mexico.

Aug. 16, 1937.

Rehearing Denied Dec. 2, 1937.

John B. Sanchez and F. T. Cheetham, both of Taos, for appellant.

Frank H. Patton, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for the State.

ZINN, Justice.

Daniel Vargas (defendant below and appellant here) was charged by information with the unlawful, deliberate premeditated killing of Jake Mossman. He admitted firing the shot that killed deceased, but claimed that the shot was fired not only in defense of his person but in the performance of his legal duty as a deputy sheriff of Taos county. After a verdict of guilty of voluntary manslaughter Vargas was sentenced to imprisonment in the state penitentiary for a term of not less than five years and not more than seven years. From this judgment and sentence Vargas appealed.

The record shows that just before the time of the fatal shot the defendant, a deputy sheriff, was at his house in Questa, N. M., when he was called by Luis Ortiz and Elidio Herrera presumably to stop a fight in progress between Mossman and one Adnadio Archuleta. The defendant proceeded to where the men had been fighting and found Mossman. He told Ortiz and Herrera to stay back. The defend-ant overtook Mossman and they went to a garage where the Port of Entry was located. The defendant called for possemen to assist him in handling Mossman, who was armed with a rock or rocks. John Vokich undertook to assist the defendant in handling Mossman, but Mossman shook Vokich off. The defendant then hit Mossman over the head with his night stick, knocking him down. Mossman then gave up the rocks and was loaded in the back seat of an automobile. Defendant then went out to get help to take Mossman home. While the defendant was getting a posseman to help him take Mossman home, Mossman got out of the car, stepped out of a side door of the garage, and proceeded northerly across a creek or ditch where he hid. Ben Padilla (one of the possemen), who had been called to assist defendant, indicated to the defendant where Mossman was hiding. Thereupon Mossman got up and started running across the south side of a saloon owned by one Padilla. The defendant went around the north side. Padilla heard defendant call to Mossman to stop two or three times. Then two shots were fired which resulted in the death of Mossman. One of the bullets entered the right leg just below the knee on the inside and seemed to go around just through the skin, close to the surface and come out below. This was just a minor wound. The other bullet entered on the right lower side of the abdomen and found its exit about three or four inches from and below the crease or middle of the buttocks.

Ten assignments of error are presented by the defendant on appeal. The first five relate to the trial court's ruling in each case in sustaining objections of the prosecution to questions propounded by counsel for the defendant in cross-examining the State's witnesses. We have examined the errors complained of and can find no prejudice resulting to the defendant from the rulings of the trial court. The method and extent of cross-examination rests largely in the discretion of the trial court, and unless it can be shown that the trial court abused his discretion to the prejudice of the party complaining, such rulings will not be disturbed on appeal. State v. Carter, 21 N.M. 166, 153 P. 271; State v. Roybal, 33 N.M. 540, 273 P. 919; State v. Burrus, 38 N.M. 462, 35 P.2d 285.

The sixth assignment of error is predicated upon the trial court's refusal to direct a verdict of not guilty at the conclusion of the case for the prosecution. The defendant did not elect to stand on this motion, but proceeded with his defense. No error can be predicated. State v. White, 37 N.M. 121, 19 P.2d 192, and cases therein cited. Also State v. Turney, 41 N. M. 150, 65 P.2d 869. This rule is as firmly established in this jurisdiction as the Rock of Gibraltar.

The seventh and eighth assignments of error are predicated upon the court's refusal to withdraw from the consideration of the jury the charge of first and second degree murder. The defendant was convicted of voluntary manslaughter, and he was not prejudiced by the court's ruling. State v. Analla, 34 N.M. 22, 276 P. 291, and authorities therein cited.

The ninth assignment of error relates to five instructions given the jury by the court on the law of voluntary manslaughter. It is the defendant's contention that the record fails to disclose any evidence sustaining a verdict of voluntary manslaughter, and therefore the court erred in giving any instruction thereon. We have examined the record, and find from the defendant's own testimony that at the time of the killing he was inspired more by fear than rage. The defendant himself testified that at the time of the killing he was afraid of Mossman. This clearly brings the case within the doctrine laid down by this court in the case of State v. Kidd, 24 N.M. 572, 175 P. 772. This doctrine of heat of passion engendered by fear or terror, first announced in the Kidd Case, has been the rule in this jurisdiction to this day. This rule was again reaffirmed in the recent decision by this court in the case of State v. Inman, 41 N.M. 424, 70 P.2d 152.

The tenth and final assignment of error is merely a general assignment based on the defendant's theory that the verdict is contrary to the evidence and the law. An examination of the record clearly shows that the evidence supports the verdict, and that the verdict is not contrary to the law, and the judgment of the court on the verdict must stand in the absence

of error. We find no error. It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.

## On Rehearing.

ZINN, Justice.

Appellant has filed a motion for rehearing, contending that in our consideration of the case we overlooked the fact that the appellant was a deputy sheriff at the time of the fatal killing, and that he was acting in line of duty.

Though we did not comment extensively on the law of justifiable homicide as applicable to one who interposed the defense that he was a peace officer, and the homicide was committed in line of duty, we nevertheless did not overlook the matter.

Appellant did not at any time challenge the trial court's instructions to the jury relative to a justifiable homicide when committed by a public officer, either in obedience to a judgment of a competent court, or in the discharge of his legal duty. The record clearly shows that such instructions were given.

 Counsel' for· appellant, under the broad general assignment that the judgment of the court is contrary to the evidence and the law, attempts to predicate error on the theory that the appellant was immune from prosecution by reason of his status as a peace officer. Ordinarily such an assignment of error does not justify any extensive comment on the law as contended for by appellant. However, in view of the importance to the law enforcing officers of the state, and of the general interest in this question of law, we have concluded to set forth our views on the rights and duties of peace officers under circumstances as disclosed by this record.

Our statutes seem to give officers as much or more authority than the average State. These duties are set out in section 33-4416 (1929 N.M.Comp.St.) as follows: "The sheriff shall be conservator of the peace within his county; shall suppress assaults and batteries, and apprehend and commit to jail, all felons and traitors, and cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them." And in order to further assist sheriffs in carrying out their duties, section 33-4414 provides: "All sheriffs shall at all times be considered as in the discharge of their duties and be allowed to carry on their persons arms not concealed."

"Justifiable homicide" is defined in section 35-317 as follows: "A homicide is justifiable when committed by public officers, and those acting by their command in their aid and assistance, either in obedience to any judgment of any competent court, or when necessarily committed in overcoming actual resistance to the execution of some legal process, or to the discharge of any other legal duty." **The**

portion of this section directly applying to defendant would read: "A homicide is justifiable when committed by a public officer when necessarily committed in overcoming actual resistance to the discharge of any legal duty." Section 35-318 provides in part as follows: "Such homicide is also justifiable when committed by any person in either of the following cases: * * * Third. When necessarily committed * * * in lawfully keeping and preserving the peace."

The facts show that deceased was disturbing the peace, that he was placed under arrest; that he resisted arrest and threatened to do bodily harm to defendant; that he escaped and continued to resist defendant's effort to recapture him; that at the time the fatal shot was fired he was not retreating. There is no evidence to show that defendant fired the shot with malice, with or without premeditation, and there is evidence to support the contention that defendant fired the shot in self-defense. In State v. Dunning, 177 N.C. 559, 98 S.E. 530, 531, 3 A.L.R. 1166, the court said:

"An officer, having the right to arrest an offender, may use such force as is necessary to effect his purpose, * * * to the extent of taking life."

We find this note in 3 A.L.R. 1175, quoting the court in the case of North Carolina v. Gosnell (C.C.) 74 F. 734: "If one charged with a misdemeaor resists arrest, the officer may use sufficient force to overcome resistance, and if the resistance is with a deadly or dangerous weapon the officer may resort to extreme measures to avoid serious injury and accomplish the arrest, even to shooting. He is never required, under such circumstances, to afford the resisting offender the opportunities of a fair and equal struggle, but may avail himself of any advantages that arise in the conflict."

There is no question but that large rocks hurled by a man the size of this misdemeanant were dangerous weapons. Section 540, Wharton's Criminal Law (12th Ed.) vol. 1, p. 776, is as follows: "Officer when in danger of life may kill person charged with misdemeanor attempting to escape. Although an officer must not kill for an escape where the party is in custody for a misdemeanor, yet if the party assault the officer with such violence that he has reasonable ground for believing his life to be in peril, he may justify killing the party. State v. Anderson (1883) 19 S.C.L. (1 Hill) 327 and Foster's Case (1825), 1 Lewin, C.C.(Eng.) 187."

The Supreme Court of Missouri stated the correct rule in State v. Dierberger, 96 Mo. 666, 10 S.W. 168, 171, 9 Am.St.Rep. 380, as follows: "The officer, when making an arrest, may, of course, defend himself, as may any other person who is assaulted; but the law does not stop here. The officer must of necessity be the aggressor. His mission is not accomplished when he wards off the assault. He must press forward and accomplish his object. He is not bound to put off the arrest until

a more favorable time. Because of these duties devolved upon him the law throws around him a special protection. As we said in the recent case of State v. Fuller, 96 Mo. 165, 9 S.W. 583, his duty is to overcome all resistance, and bring the party to be arrested under physical restraint, and the means he may use must be coextensive with the duty."

Coming directly to the instructions given the jury by the court, the record shows that the court instructed the jury as follows: "The defendant has interposed two special pleas in this case, by virtue of which or by virtue of either one of which he claims that he is not guilty of the crime here charged, and they are: the plea of self-defense and the plea of justifiable homicide."

The court without any objection from counsel for the defendant, also gave the following instructions:

"You are instructed that it is the statutory duty of a deputy sheriff to keep and preserve the peace, suppress assaults and battery, and to apprehend and take to jail any person who is drunk and disorderly."

"Therefore, if you believe from the evidence, or if you entertain a reasonable doubt thereabout, that at the time the defendant killed the deceased, or immediately prior thereto, the deceased was disturbing the peace, was in the act of or was attempting to commit assault and battery, or was drunk and disorderly, and that in the performance of his duty with reference thereto, as hereinabove just stated, it was reasonably necessary for the defendant to shoot and kill the deceased, you should then acquit the defendant of the crime here charged on the ground of justifiable homicide committed by an officer in the discharge of his legal duty."

The trial court might have instructed the jury at greater length upon the law of justifiable homicide as applicable to peace officers; but, in the absence of any objections to the instructions as given, no error can be predicated at this time. We do not mean to hold that the instructions as given are either complete and sufficient or are incomplete and insufficient. That question, as heretofore pointed out, is closed to appellant. This opinion on rehearing is to point out the law of justifiable homicide as applicable to this defendant as a peace officer. Such officers are on a different plane than others when charged with a homicide committed during the performance of their official duty. Such officers can claim the protection of the law clearly given them by 1929 Comp. St. § 35-317 and section 35-318. The Missouri decision (State v. Dierberger, supra) above quoted is a clear exposition of the law applicable herein, and we cite the same with approval.

The jury in applying the facts to the law so given them by the court found against the defendant, and by their verdict of guilty of manslaughter the jury has conclusively found that the defendant as an officer went further than the law

permits. Such a finding, being supported by substantial evidence, will not be disturbed on appeal. This principle has been passed upon by this court so many times as to require no citation of authorities.

For the reasons given, the motion for rehearing will be denied. It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.