364 P.2d 120

STATE of New Mexico, Plaintiff-Appellee,

v.

Frank QUINTANA, a/k/a Zorro, Defendant-Appellant.

No. 6908.

Supreme Court of New Mexico.

Aug. 11, 1961.

Bertrand B. Prince, Santa Fe, for appellant.

Earl E. Hartley, Atty. Gen., F. Harlan Flint and Mark C. Reno, Asst. Attys. Gen., for appellee.

CHAVEZ, Justice.

Appellant, Frank Quintana, was found guilty by a jury on two counts of an information which accused him, under count one, of armed robbery and, under count two, of grand larceny. The trial court sentenced appellant to serve a term in the State Penitentiary under each count and ordered that the sentences run consecutively and not concurrently. From the judgment and sentence, he appeals.

On the night of October 29, 1959, at approximately 7:15 P.M., at which time it was raining, two persons wearing silk stockings over their faces, entered the Drive In Liquor Store located at 903 Pecos Trail, Santa Fe, New Mexico, owned by Corrine Martinez and her husband, Paul A. Martinez. Corrine Martinez and a customer, one Col. John K. Sells, a retired Army officer, were inside the liquor store at that time. One of the two masked persons was a tall man about six feet in height with extremely broad shoulders and was a little bit stooped. The other man was about five feet six or five feet seven inches tall. The tall man had on a striped cap and a three-quarter length blue or blue-gray jacket

which was closed or buttoned. He wore light colored trousers, very well creased, that had a grease or oil mark near the left hip.

The tall man had a gun and the short man said: "This is a stick up, Lady, give us your money." The short man then went to the cash register and took out $152.36 in cash and four checks totaling $86.90. The masked persons also took two bottles of Johnny Walker Scotch, but left $34.96 in the cash register. Before the short man went to the cash register, Mrs. Martinez and Mr. Sells were ordered to lie down, which they did, at least in part. Mr. Sells picked up a bottle of wine and threw it in the direction of the two masked men, saying: "How about a drink?" The bottle fell on a glass case and broke. One of the two masked men said: "You are playing with your life, mister." The tall man, at this time, was pointing the pistol at Sells. It was a 38-calibre nickel plated revolver. The short man asked Mrs. Martinez: "Where's your safe?" and she told him that they didn't have one. The short man slipped and cussed in Spanish. Shortly after taking the money from the cash register and the two bottles of scotch whisky, the two masked men left the store and ran in a southerly direction on the Las Vegas road.

On the Saturday following the robbery, October 31, 1959, at approximately 7:20

P.M., appellant was arrested by the police, taken to the police station and questioned. He refused to say anything at all, even as to where he was living. The police checked various places in the vicinity of where appellant was arrested and soon found out that he was living at apartment number nine located at 119 Park Avenue, operated by Corine P. Zamora. The door to this apartment was locked. The police obtained a search warrant and proceeded to appellant's apartment where they found a key in the window sill on the outside. They went inside of the apartment, conducted a search and, among the clothes, found a pair of very light tan trousers, a blue three-quarter length jacket, a striped cap, a hat and a pair of shoes, all of which were very wet and muddy.

On October 30th at approximately 8:09 A.M., one of the police officers found a silk stocking in front of 916 Old Pecos Road and a few minutes later found another silk stocking in front of 844 Old Pecos Road. The stockings were found about a block apart.

On the Saturday following the robbery, Mrs. Martinez, at the police station, identified the trousers, the jacket, the hat and the shoes. She identified the trousers and the jacket as the ones worn by appellant at the time of the robbery, and she further identified the mark which was on the left side of the trousers.

Appellant, under point I, argues that the testimony of the state's witnesses was insufficient to establish the identity of appellant as one of the masked persons who committed the robbery and larceny. We cannot agree with this contention. On the night of October 29, 1959, two persons entered the liquor store wearing silk stockings over their heads and faces. The taller of the two persons held a 38-calibre pistol. The only way that appellant and his companion could be identified was by their size, height, movements, features, mannerisms, and by the clothes they were wearing.

Mrs. Martinez testified that she was positive that appellant was one of the persons because of his posture, size, stoop, and because of what he was wearing. On the night that the robbery occurred, both Mrs. Martinez and Mr. Sells described appellant and the clothes he was wearing at the time of the robbery. At the trial, both Mr. Sells and Mrs. Martinez identified the trousers and jacket worn by appellant on the night of the robbery, and described appellant as being about six feet tall with very broad shoulders. Mrs. Martinez testified that she was able to identify appellant because "he had the same wide shoulders, the same stoop, the way he carried himself." Mr. Sells identified appellant as follows:

"* * * the Defendant here and the larger man have the same relative heights, very broad shoulders and carriage. Based on that, I am certain in my mind that this man, this defendant, is the larger of the two men who robbed the liquor store on the night of October 29, 1959."

Mr. Sells further testified:

"I feel certain in my mind that is the larger of the two men that robbed the liquor store on the night in question. I base that upon the broadness of his shoulders, the way he sits with his head *protuded* forward, his general height. I have seen the Defendant walking outside of the court room on another occasion."

Mr. Sells also testified that the pistol the appellant held in his hand at the time of the robbery was a 38-calibre revolver.

On October 31, 1959, a few days after the robbery, the police found a box of 38-calibre cartridges in appellant's apartment. They also found the trousers and jacket which were definitely identified by Mrs. Martinez and Mr. Sells as being the same clothes the taller of the two robbers was wearing on the night of the robbery.

This court, in State v. Fore, 37 N.M. 143, 19 P.2d 749, 750, said:

"The opinion of the witness need not be based upon a recognition of face and features; it may be based upon the voice, size, gait, and movements of the person whose identity is in question. * * *"

Wharton's Criminal Evidence, Vol. 1, 12th Ed., § 182, p. 363, states the rule as follows:

"It is relevant to admit testimony of a witness that he recognized a person by his height and weight, or size, or by his walk, or by his clothing."

After reviewing the record we are convinced that there is sufficient evidence to establish that appellant was the tall person who held the revolver during the robbery on the night of October 29, 1959, at the Drive In Liquor Store.

■ There is no merit in appellant's point II, that the court unduly restricted the cross-examination of defense counsel of one of the state's witnesses.

After the witness, Mrs. Corrine Martinez, had identified the appellant by his size, posture, stoop and the clothes he was wearing, the following took place:

"Q. When you were about four feet behind the counter, did you have the opportunity to look at him and examine him and can you now state that when you saw him again at that close a distance, if you are positive that this was the Defendant, or the person that you saw about four feet from you when you were behind the counter? A. I couldn't identify his features because of the stockings, but the posture—about the size—the clothes were all the same.

"Q. Then, you are not, outside of the height, the posture you refer to—you are not able to state positively this Defendant was one of the persons that went to the Drive In Liquor Store on October 29, 1959? A. I can state positively, except I cannot identify the features.

"Q. Then, you are not positive he is the same man or this is the same face?

"Mr. Sanchez: Objection.

"Court: She has already answered the question. On what basis of identification that she made, I think the Jury can determine what the identification is—whether it is a proper one or not."

The court did not unduly restrict appellant's cross-examination of Mrs. Martinez. The witness had already stated positively that she could identify appellant, except that she could not identify his features. Also, there were actually two questions in one: (a) As to whether or not appellant was the same man; and (b) "or this is the same face." The witness could not testify as to the "same face" as appellant had a silk stocking over his head and face.

Point is also made because the trial court sustained an objection on cross-examination of Mrs. Martinez as to whether the appellant was the same height as one of the robbers. The record is replete with her testimony concerning the height of the taller

of the robbers being the same as that of appellant. Again it is our conclusion that the cross-examination was not unduly restricted.

■ The extent of cross-examination rests largely within the discretion of the trial court and appellant was not deprived of the opportunity to test the credibility of Mrs. Martinez' testimony. State v. Vargas, 42 N.M. 1, 74 P.2d 62; and Lillibridge v. Coulter, 52 N.M. 105, 192 P.2d 315.

Under point III appellant contends that the consecutive sentences imposed by the trial court under armed robbery and grand larceny amount to a double sentence.

The trial court sentenced appellant under the armed robbery count to serve a term of not less than three years nor more than twenty-five years, and under the grand larceny count to serve a term of not less than one year nor more than ten years in the State Penitentiary.

The applicable statutes provide:

"40–42–2. Robbery while armed with dangerous weapon—Penalty.—If any person shall assault another, and shall feloniously rob, steal, and take from such person any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, he shall be punished by imprisonment in the state penitentiary not more than twenty-five ■ years, nor less than three [3] years."

"40–45–2. Grand larceny—Value of property—Documents.—Every person who shall commit the crime of larceny, by stealing of the property of another any money, goods or chattels, or any bank note, bond, promissory note, bill of exchange, or other bill, order or certificate, or any books of accounts for or concerning money or goods, due or to become due, or to be delivered, or any deed of writing, containing a conveyance of land or other valuable contract in force, or any writ, process or public record, if the property stolen shall exceed the value of fifty dollars [$50.00], shall be punished as provided in section 40–45–1 New Mexico Statutes, Annotated, 1953 Compilation. * * *"

Article II, § 15, of the Constitution of New Mexico, provides:

"Sec. 15. [Self-incrimination—Double jeopardy.] No person shall be compelled to testify against himself in a criminal proceeding, nor shall any person be twice put in jeopardy for the same offense; and when the indictment, information or affidavit upon which any person is convicted charges different offenses or different degrees of the same offense and a new trial is granted the accused, he may not again

be tried for an offense or degree of the offense greater than the one of which he was convicted."

█ The rule as to the imposition of double punishment, as a violation of a constitutional provision such as ours, is stated in 24 C.J.S. Criminal Law § 1990, pp. 1212–1213, as follows:

"The constitutional principle that no one shall be put in jeopardy twice for the same offense * * * is broad enough to mean that no one can lawfully be punished twice for the same offense; the one follows from the other, and the constitutional provisions are designed to protect accused from a double punishment as much as to protect him from two trials."

Thus, in New Mexico double punishment is prohibited by the constitutional limitations against double jeopardy.

In the federal courts, although there is some uncertainty as to whether the imposition of two sentences in one crime amounts to double jeopardy and a violation of the Fifth Amendment of the Constitution of the United States, it is beyond argument that such sentences are invalid when not authorized by statute. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; United States v. Noble, 3 Cir., 155 F.2d 315, 318.

However, in Coy v. United States, 6 Cir., 156 F.2d 293, it was held that double punish-ment is prohibited by the Fifth Amendment. See also United States v. Leather, 7 Cir., 1959, 271 F.2d 80. It should also be noted that the so-called "single transaction" rule does not prevail in the courts of the United States, wherein it appears settled that it is competent for Congress to create separate and distinct offenses growing out of the same transaction. Sherman v. United States, 9 Cir., 1957, 241 F.2d 329, 334.

█ There is authority to the effect that if separate and distinct criminal acts are committed and they violate more than one statute of our criminal law, punishment for each of them would be proper, although they arose out of a single transaction. People ex rel. Sams v. Murphy, 1959, 8 A.D. 2d 460, 188 N.Y.S.2d 1010; 24 C.J.S. Criminal Law § 1990, p. 1213. However, if the several offenses are the same, as where they arise out of the same transaction, and were committed at the same time, and were part of a continuous criminal act, and inspired by the same criminal intent, which is an essential element of each offense, they are susceptible of only one punishment. Munson v. McClaughry, 10 Cir., 198 F. 72, 42 L.R.A.,N.S., 302; Stevens v. McClaughry, 10 Cir., 207 F. 18, 51 L.R.A.,N.S., 390; Holiday v. United States, 8 Cir., 130 F.2d 988; Holbrook v. United States, 8 Cir., 136 F.2d 649; People v. Candelaria, 153 Cal. App.2d 879, 315 P.2d 386; People v. Langdon, 52 Cal.2d 425, 341 P.2d 303; People v. Melgard, 174 Cal.App.2d 733, 345 P.2d

87; 15 Am.Jur., Criminal Law, § 451, p. 111; 24 C.J.S. Criminal Law § 1990, p. 1213; compare Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23, annotation 87 L.Ed. 44.

The rule is stated in Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102, 21 A.2d 920, 921, as follows:

> " * * * The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are 'successive steps in the same transaction' but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The 'same transaction' test is valid only when 'transaction' means a *single act*. When the 'transaction' consists of two or more criminal acts, the fact that the two acts are 'successive' does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, e. g., larceny is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge. If a defendant commits a burglary and while in the burglarized dwelling he commits the crimes of rape or kidnapping, his crimes do not merge, for neither of them is necessarily involved in the other. When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both*. * * * "

See also Commonwealth v. McCusker, 363 Pa. 450, 70 A.2d 273.

Commonwealth ex rel. Tokarchik v. Claudy, 1954, 174 Pa.Super. 509, 102 A.2d 207, 209, involved an accusation of aggravated assault and battery and assault with intent to ravish. The offenses were committed on the same occasion, the accused was convicted of both offenses, and the court imposed separate sentences for each of the convictions. The court, in passing upon the question, stated:

> "The court however, in our view, erred in imposing separate sentences on each of the convictions. Separate indictments may properly charge the same state of facts as constituting different offenses, but where the crimes as charged grow out of the same transaction, different merely in degree, only one penalty can be imposed after conviction of both. * * * "

In State v. Hill, 44 N.J.Super. 110, 129 A.2d 752, 753, the defendant, in one count, was charged with robbery and in another count with assault with intent to rob. Both accusations grew out of the same transaction. The proof of the state showed an actual forcible taking of the coat of the victim and the defense was a complete

·denial of presence at the scene of the crime. Hill was sentenced under each count, the terms to run concurrently. The court held that the evidence disclosed but one criminal transaction and that the facts which proved the robbery were the same as those to be relied upon to prove the assault with intent to rob. The court, upon the question of merger, stated:

"The test to be applied in deciding the issue of merger is whether a particular act involved in a single transaction is a distinct criminal affair or an integral part of the principal offense charged. A prosecution for any part of a single crime bars any additional prosecution or sentence for the whole crime or any other constituent element of the whole crime. * * *

" * * * Therefore, only one sentence, and that for the major crime, was proper on the verdict of guilty as charged. * * *"

The only New Mexico case that we have been able to find, approaching the question involved in the case before us, is State v. Allen, 59 N.M. 139, 280 P.2d 298, 299, in which the defendant was convicted of theft from a person and involved the stealing of money and a bottle of vodka. The question was whether the stealing constituted one offense or whether such acts constituted separate offenses. It appears that on the trial the state first proved the theft of the vodka. At the conclusion of the

testimony on that point, the defendant moved to require the state to elect whether it would rely for a conviction on the theft of the vodka or of the money. The motion was denied. The motion was renewed and again denied at the conclusion of the testimony of the state. This court held:

"Where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent, impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse between each act."

■ We hold that under the evidence and applying the factual test, the act of grand larceny was necessary to, or incidental to the crime of armed robbery which the defendant committed. The offense of grand larceny was merged with the graver offense of armed robbery. The grand larceny was not a separate and distinct offense from the crime of armed robbery. The offenses arose out of the same transaction, were committed at the same time, and were a part of a single criminal act. The defendant was properly convicted on both armed robbery and grand larceny, but he cannot be doubly punished for both of those crimes.

**60**

The case is remanded to the district court with direction to vacate the sentence imposed under count II of the information. In all other respects the judgment and sentence of the district court is affirmed.

It is so ordered.

MOISE and NOBLE, JJ., concur.

COMPTON, C. J., and CARMODY, J., not participating.