588 P.2d 1045

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Ernest Victor GALLEGOS,**
**Defendant-Appellant.**

**No. 3559.**

Court of Appeals of New Mexico.

Oct. 31, 1978.

Rehearing Denied Nov. 15, 1978.

Writ of Certiorari Denied Dec. 15, 1978.

John B. Bigelow, Chief Public Defender, Reginald J. Storment, Appellate Defender, Barbara Nobel Farber, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Lawrence A. Gamble, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

██ Adjudged guilty and sentenced for aggravated battery with a deadly weapon, defendant appeals. Issues listed in the docketing statement, but not briefed, are deemed abandoned. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977). We (1) answer to issues summarily and discuss (2) polygraph test results, (3) disclosure by defendant, (4) state of mind, and (5) merger.

The victim, Parlomino, was dancing with Marcella at a lounge when defendant stabbed Parlomino.

*Issues Answered Summarily*

(a) Defendant sought to exclude identification testimony based on a photographic identification.

(1) The evidence does not show that the circumstances of this identification created a substantial likelihood of a mistaken identification. *State v. Jones*, 83 N.M. 600, 495 P.2d 380 (Ct.App.1972).

██ (2) Defendant contends the photographic identification was "unnecessary because an actual lineup could have been con-

ducted." That a lineup could have been conducted was not relevant to the question of whether the photographic identification procedure was impermissibly suggestive. *United States v. Sutherland*, 428 F.2d 1152 (5th Cir. 1970), cert. denied, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972).

■ (3) Defendant asserts he was prejudiced because his photograph contained a date. This date showed the date of his arrest on the charges for which he was tried. This did not put defendant's criminal record in issue and did not establish°that defendant was prejudiced. See *State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App. 1978).

■ (4) Defendant complains that admission of the six "mug-shots" into evidence was improper because irrelevant. Identification of defendant as the one who stabbed Parlomino was a crucial issue in the case. Testimony showing that Parlomino identified defendant's photograph as a picture of his assailant, five weeks after the stabbing, and never deviated from that identification, was relevant. See *State v. Mordecai*, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971).

■ (5) Defendant asserts the use of any mug-shot photographs was prejudicial. Since all of the photographs were mug-shots, these photographs did not suggest an identification in this case. Further, Parlomino testified he never looked at the numbers on the pictures.

(b) Defendant asserts there was prosecutor misconduct during the State's closing argument. We disagree.

■ (1) The comments concerning defendant's beard were well within the evidence.

■ (2) The comments concerning Marcella's refusal to testify before the grand jury and her denial of being at the scene when Parlomino was stabbed, were based on evidence at the trial. There was also evidence that defendant and Marcella were friends, were sitting together outside the courtroom and kissed as they came into the courtroom. The prosecutor's comment must be considered in relation to this evidence. The prosecutor stated, in connection with Marcella's denial of being at the scene and of her refusal to testify before the grand jury: "I submit to you that the reason is because both she and the defendant know that the defendant is guilty and the only question in their mind is whether or not you know it, ladies and gentlemen." The comment attempts to explain Marcella's actions on the basis of Marcella's and defendant's knowledge. Such a comment is not the same as the comment in *State v. Leyba*, 89 N.M. 28, 546 P.2d 876 (Ct.App. 1976). In light of Marcella's friendly relations with defendant, we do not consider it as a comment on defendant's failure to testify.

■ (3) The prosecutor's comment as to why he had Parlomino take a polygraph examination was invited by defendant's closing argument.

## Polygraph Test Results

Parlomino was given a polygraph examination. The results of this test were offered by the prosecution and admitted as evidence during the State's case-in-chief. Defendant makes a comprehensive attack on the propriety of admitting the test results. The defense contentions, and our answers, follow.

(a) The foundation requirements for the admissibility of the results of polygraph examinations are set forth in *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977).

(1) Defendant asserts the examiner, Rodriguez, was not qualified to administer the test to Parlomino because of Rodriguez' minimal exposure to the fields of physiology and psychology, and because of Parlomino's inability to communicate in English. Rodriguez testified that he had had "some" physiology and psychology at the school he attended. These subjects were discussed in relation to polygraph techniques. He also testified that at the pretrial interview he asked Parlomino about hospitalization, whether Parlomino had ever sought psychiatric help, had ever been a patient in a

mental hospital or sanitarium, had ever had a brain wave test, ever been treated for alcoholism, or nervousness or nerves, ever had dizzy spells, plus numerous other questions directed to Parlomino's physical condition. Rodriguez testified that the questions were from a prepared form; the questions were based on his training. Rodriguez also testified that there was no communications problem because he was bilingual. Rodriguez conducted the pretest interview with Parlomino in both English and Spanish. In administering the test, Rodriguez questioned in English, Parlomino answered in Spanish. Rodriguez found nothing that would indicate Parlomino was not a suitable subject for testing.

(2) Defendant asserts the testing procedure was not valid because the "relevant" questions, see State v. Brionez, 91 N.M. 290, 573 P.2d 224 (Ct.App.1977), were ambiguous and permitted rationalization by Parlomino. Rodriguez used two relevant questions.

■ The first was, "Before you were stabbed did you provoke the man who stabbed you?" Defendant argues that the words "did you provoke" invites rationalization. Rodriguez testified that Parlomino defined English "provoke" as Spanish "provocar", that this was discussed at length because Parlomino was denying that he did anything other than to tell defendant to leave the lady alone. Before the jury, Rodriguez gave more explanation. Rodriguez testified that Parlomino explained "provocar" to mean a confrontation, argument or use of bad language toward someone. Defendant also asserts this first "relevant" question was improper because not relevant to issues at trial. This argument is specious. The polygraph test is for truthfulness. See State v. Bell, supra. "Relevant" questions in a polygraph examination go to the validity of the test. See State v. Fuentes, 91 N.M. 554, 577 P.2d 452 (Ct.App. 1978).

■ The second relevant question was, "Is the man in the picture line-up the same man who stabbed you?" The evidence is uncontradicted that Parlomino had twice identified defendant by picking his photo-

graph from a group of pictures. Defendant says the second relevant question was improper because Parlomino's answer merely manifests his belief that he picked the right photograph. This argument develops nothing as to the ambiguity of the question or rationalization of the answer.

(3) Defendant asserts the testing procedure was invalid because the reliability of the scoring system was not explained or established by competent evidence. Rodriguez testified that he used three charts with the two relevant questions, thus, Parlomino's response to the relevant questions was scored six times. The scoring was cumulative. The cumulative score was plus ten. Rodriguez testified that on the basis of the charts and relevant questions used, a plus six was "the cut-off point" for a truthful answer. Rodriguez testified that for a valid polygraph examination there should be "[n]o less" than three charts and no more than three relevant questions. As to the number of relevant questions to be used, it depends on the examiner and the "issue" to be tested. Rodriguez "would call an examination truthful with plus 10 with three relevants." Parlomino was "reacting stronger" to his examination when he had a plus ten cumulative score with only two relevant questions asked. Certainly, this is an explanation of a scoring system.

The evidence reviewed above is essentially uncontradicted. Defendant contends that Rodriguez' testimony is unreliable, but his argument is not based on evidence. Rather, defendant relies on State v. Brionez, supra. In Brionez we held that the trial court did not err in excluding the results of the polygraph test. The facts in Brionez are not the same as this case. For example, in Brionez there was evidence that the person to be examined was "mentally off"; there is nothing indicating Parlomino had, or ever had, a mental problem. In Brionez the relevant questions included rationalization; in this case the evidence is that Rodriguez discussed the questions with Parlomino to make sure that Parlomino understood them; the purpose was to try and eliminate rationalization from Parlomino's response.

Defendant's argument overlooks the holding of *State v. Brionez*, supra. It is: The admission or exclusion of polygraph test results, like the admission of other expert testimony, is within the discretion of the trial court. The trial court's ruling is reviewed to determine whether there was an abuse of discretion." See *State v. Bell*, supra; *State v. Fuentes*, supra. The evidence does not show an abuse of discretion in admitting the polygraph test results. The evidence being different than the evidence in *State v. Brionez*, supra, the *Brionez* decision does not support the implied claim that the trial court abused its discretion as a matter of law.

(b) Defendant makes two general arguments as to the constitutionality of using the polygraph test results.

(1) Defendant contends that a) admission of Rodriguez' testimony concerning the polygraph test results was an indirect comment on defendant's silence, because defendant did not take a polygraph examination; b) references to the polygraph examination during voir dire of the jury, the prosecutor's opening statement and the prosecutor's closing argument, and asking Parlomino whether he had taken a polygraph examination, denied defendant a fair trial. These claims are frivolous. The fact that Parlomino took the polygraph examination is not a comment on defendant's failure to take such an examination. Establishing that Parlomino did take such an examination, and references to admissible evidence did not deprive defendant of a fair trial.

(2) Defendant asserts, in effect, that only a defendant may introduce the results of a polygraph examination, that the prosecution may not do so. The argument is that polygraph examination results are admissible by a defendant because a defendant has a right to defend against accusations, and the prosecution does not have a similar right. This argument overlooks the fact that relevant evidence and expert testimony are admissible, regardless of whether offered by the defendant or the prosecution. Evidence Rules 402 and 702; *State v.*

*Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975). The prosecution must prove its case beyond a reasonable doubt, U.J.I.Crim. 1.00. Relevant evidence which assists the prosecution in meeting this burden is admissible. The Constitution, considered generally, does not bar the prosecution from introducing relevant evidence.

(c) Defendant asserts that Rodriguez' testimony as to the results of the polygraph examination, that Parlomino was truthful in his answers to the two relevant questions, was improperly admitted. He relies on *State v. Alaniz*, 55 N.M. 312, 232 P.2d 982 (1951) which states that the prosecution "cannot corroborate its own witness by showing his prior consistent statements." Defendant recognizes that this rule does not apply when the witness' credibility has been attacked. See *State v. Bell*, supra; *State v. Maes*, 81 N.M. 550, 469 P.2d 529 (Ct.App. 1970). Defendant contends, however, that evidence to corroborate the witness is limited to evidence that "will rebut the attack on credibility." Defendant asserts that Parlomino's answers were prior statements consistent with Parlomino's trial testimony, and that these answers were inadmissible because self-serving. See *State v. Hunt*, 83 N.M. 753, 497 P.2d 755 (Ct.App.1972). Defendant asserts his only attack on Parlomino's credibility went to his ability to perceive, and since there was no charge of improper influence, or lying, see *State v. Bell*, supra, the applicable rule is stated in *State v. Alaniz*, supra.

Evidence Rule 608 disposes of defendant's arguments. The pertinent portions state:

(a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rodriguez gave his opinion that Parlomino was truthful in answering the relevant questions; this opinion supported Parlomino's credibility. Rodriguez' testimony was admissible because the cross-examination of Parlomino was an attack on Parlomino's truthfulness. Rodriguez' testimony was admissible under Evidence Rule 608(a).

■ Defendant asserts Rodriguez' testimony was inadmissible under Evidence Rule 608(b) because it was extrinsic evidence of the conduct of Parlomino. The argument misconceives the nature of polygraph examination testimony. Rodriguez gave his opinion of Parlomino's truthfulness. All the rest of his testimony went to Rodriguez' qualifications, the reliability of the testing procedure, and the validity of the tests. *State v. Bell*, supra. This testimony showed the facts and data on which Rodriguez based his opinion. See Evidence Rule 703. It was not the conduct of Parlomino in taking the test and reacting to the questions asked that supported Parlomino's credibility; rather, it was Rodriguez' opinion that supported Parlomino's credibility. Evidence Rule 608(b) did not exclude Rodriguez' opinion testimony.

■ (d) Defendant asserts that Rodriguez' opinion was of marginal relevance and the probative value of the opinion was outweighed by its prejudicial effect. The cross-examination of Parlomino attempted to show that he did not really know the size of the blade of the knife with which he was stabbed, was unsure of the hand in which the assailant held the knife, was unsure of when the assailant took the hand of Marcella and ran away with her. The cross-examination also brought out that when Parlomino viewed the group of photographs, some five weeks after the stabbing, Parlomino expected to see a photograph of the assailant, but had not given a description of the assailant before viewing the photographs. With this cross-examination, we cannot say the trial court abused its discretion in refusing to exclude Rodriguez' testimony under Evidence Rule 403. *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978).

## Disclosure by Defendant

Pursuant to Rule of Crim.Proc. 27, defendant moved, and the trial court ordered, that the "charts, reports, recordings, notes and any other documents" made in connection with the polygraph examination, be made available to the defense.

Defendant also moved that Dr. David Raskin be appointed by the court to "testify and to analyze, on behalf of the Defendant" the information made available under the discovery order. This motion was granted in part; Dr. Raskin was not appointed to testify, he was appointed to "examine, advise and consult with the defense" as to the polygraph examination.

"After Raskin analyzed the results [of the polygraph examination] and reported his conclusions", defense counsel refused to disclose the analysis and conclusions to the prosecutor. The prosecutor moved to require disclosure, relying on Rule of Crim. Proc. 28. The pertinent portion of this rule states:

(a) *Information Subject to Disclosure.* Upon motion of the state at any time after the filing of the information or indictment and subject to constitutional limitations, the court may order the defendant to permit the state to inspect and copy or photograph:

\* \* \* \* \* \*

(2) Any results or reports of physical or mental examinations and of scientific

tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at trial if the results or reports relate to his testimony.

The prosecutor sought disclosure on the basis that under this rule it was entitled to "the results of scientific examination conducted by . . . defendant's expert, which defendant intends to use at trial".

■ Defendant made various arguments in an attempt to avoid disclosure of any kind. Defendant contended that disclosure of any kind denied defendant due process, the right to put on a defense and equal protection of the law. We disagree. See *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App.1975). Defendant claimed that disclosure would violate his privilege against self-incrimination. Again we disagree. *Gray v. Sanchez*, 86 N.M. 146, 520 P.2d 1091 (1974); *State v. Smith*, supra. We add that the self-incrimination claim is frivolous; no disclosure of any kind, by defendant, is involved in this issue. See *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.1977), rev'd on other grounds, 90 N.M. 191, 561 P.2d 464 (1977).

■ As a part of defendant's efforts to avoid disclosure of any kind, defendant asserted that disclosure would violate the lawyer-client privilege. The privilege applies to confidential communications. A communication is confidential "if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client". Evidence Rule 503.

■ Having been employed to assist the lawyer in the rendition of professional legal services, Dr. Raskin was a representative of the lawyer. There is no evidence as to whether Dr. Raskin's communications with the lawyer were "not intended to be disclosed to third persons" other than in furtherance of professional legal services to the client. The only showing is the trial court order authorizing consultation with Dr. Raskin. That order authorized examination of the polygraph examination material and authorized Dr. Raskin to "advise and consult with the defense". The prosecutor's position throughout was that he was not seeking discovery of any advice or consultation: "I am not asking her for how Mr. Raskin proposed to attack my witness." The prosecution sought only the results of Dr. Raskin's analysis of the polygraph examination material which had been supplied by the State. That is all the trial court ordered be disclosed; the "results you received from Dr. Raskin shall be made available to counsel for the State."

■ There being no evidence that Dr. Raskin's analysis of the polygraph examination conducted by Rodriguez was not intended to be disclosed, there is no evidence that the Raskin analysis was a confidential communication and, thus, no evidence that the lawyer-client privilege was violated. We cannot look to the contents of the analysis because that is not in the appellate record. Dr. Raskin's analysis, in itself, was a fact constituting evidence; disclosure of that analysis, in itself, did not amount to a violation of the lawyer-client privilege absent a showing that the analysis was a confidential communication. See *State v. Steinkraus*, 76 N.M. 617, 417 P.2d 431 (1966). Defendant, objecting to discovery, had the burden of establishing the existence of the privilege. *Biliske v. American Live Stock Ins. Co.*, 73 F.R.D. 124 (W.D.Okl. 1977). He did not meet this burden. We do not hold there was or was not a violation of Evidence Rule 503. We hold only that a violation is not shown in this record.

■ Defendant also claims that discovery was not authorized under Rule of Crim.Proc. 28, quoted above. He points out that he was not authorized by the trial court to call Dr. Raskin as a witness; thus, the rule authorized discovery only to results "which' the defendant intends to introduce in evidence at the trial". We agree.

The question is whether defendant intended to introduce Dr. Raskin's analysis

into evidence at trial. Throughout the extensive hearing on the disclosure motion, defense trial counsel consistently maintained that she could not introduce any information from Dr. Raskin because it was not in a form to be admitted as evidence. She indicated she had no written report. She eventually produced a letter from Dr. Raskin; the prosecutor stated he did not ask for the letter because it "goes beyond the scope of what I asked for." The prosecutor stated that he only wanted Dr. Raskin's analysis of the charts; "this [the letter] talks about how he feels the polygraph should be attacked." Defense trial counsel then stated: "I will give . . . [the prosecutor] the oral results that I have."

Defendant's trial counsel pointed out that she had no way of getting the information from Dr. Raskin admitted into evidence. The prosecutor argued that the defense could get Dr. Raskin's analysis before the jury through cross-examination of Rodriguez, because Rodriguez would admit Dr. Raskin's expertise. When queried by the trial court as to how Dr. Raskin's analysis could be introduced during cross-examination of Rodriguez, the prosecutor agreed it could not be introduced. Thus, trial counsel were in agreement that Dr. Raskin's analysis could not be introduced into evidence at trial.

With the only showing to the trial court that Dr. Raskin's analysis could not be introduced into evidence, the requirement that it be intended to be introduced into evidence was not met and the order for disclosure was erroneous, being in violation of Rule of Crim.Proc. 28.

Although the disclosure order was erroneous, how was defendant hurt? Defendant asserts he was deprived "of his constitutional right to a fair trial and to put on a defense." The appellate record does not support this claim. Dr. Raskin's analysis of Rodriguez' polygraph examination is not referred to in the proceedings before the jury. Defendant seems to argue that the disclosure apprised the prosecutor of questions to be asked by defense counsel on cross-examination. That cannot be determined because

the record contains neither the letter nor defendant's oral disclosure. Thus, there is nothing indicating the prosecutor had advance information concerning defendant's intended cross-examination of Rodriguez. See *State v. Bustamante*, 91 N.M. 772, 581 P.2d 460 (Ct.App.1978). The only indication in the record is to the contrary; during the hearing concerning disclosure, defendant stated that cross-examination would be on the basis of books and other writings authored by Dr. Raskin.

There being nothing indicating that defendant was in any way prejudiced by the erroneous disclosure order, no reversible error occurred. See *State v. Wesson*, 83 N.M. 480, 493 P.2d 965 (Ct.App.1972).

*State of Mind*

Garrison, a part owner of the lounge where the stabbing occurred, and Parlomino were waiting to be called before the grand jury. Someone walked by. Parlomino commented, " 'Isn't that the guy that stabbed me? Why is he walking around.' "

Defendant attempted to introduce this comment into evidence during cross-examination of Garrison. The prosecutor's objection, that the comment was hearsay, was sustained. Defendant asserts this was error, contending the comment was admissible as "state of mind".

Evidence Rule 803(3) reads:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 \* \* \* \* \* \*

(3) *Then Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then existing state of mind, . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The state of mind exception in Evidence Rule 803(3) does not include a statement of memory or belief to prove the fact remembered or believed. Parlomino's comment to Garrison, " 'Isn't that the guy

that stabbed me?' " was a statement of memory. Defendant offered the comment to show "any kind of doubt or certainty that he [Parlomino] has as to his identification"; that is, to prove the fact remembered.

The Advisory Committee Notes to Evidence Rule 803(3) states:

The exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.

The trial court did not err in excluding the hearsay comment when its admission was sought through cross-examination of Garrison.

*Merger*

■ Count I of the indictment charged aggravated assault under § 40A–3–2(A), N.M.S.A.1953 (2d Repl.Vol. 6). Count II charged aggravated battery under § 40A–3–5(C), N.M.S.A.1953 (2d Repl.Vol. 6). We are not concerned with the denial of defendant's pretrial motion to elect under a theory of lesser included offenses. See *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977).

The alternatives charged in the indictment counts were not submitted to the jury. Rather, the aggravated assault charge was submitted solely on the basis of threat or menacing conduct by use of a knife. U.J.I.Crim. 3.04. The aggravated battery charge was submitted solely on the basis of battery by stabbing with a knife. U.J.I.Crim. 3.52.

Defendant requested that the aggravated assault charge be submitted as a lesser included offense to the aggravated battery charge. Defendant requested an instruction, based on U.J.I.Crim. 50.01, that the jury should first determine whether he was guilty of aggravated battery and if the jury had reasonable doubt as to his guilt of the battery charge, it was then to consider the

aggravated assault charge. The trial court refused this requested instruction, but stated that if the jury returned a guilty verdict as to both charges, the rule of merger would apply.

The jury returned verdicts of guilty as to both charges. The trial court ruled that the offenses merged and adjudged defendant guilty of and sentenced defendant solely on the aggravated battery charge.

There is no claim that merger was improperly applied on an evidentiary basis, *State v. Sandoval*, supra, called "the factual test" in *State v. Quintana*, 69 N.M. 51, 364 P.2d 120 (1961).

Defendant claims refusal of his requested instruction was error for two reasons.

First, defendant asserts that the aggravated assault charge was a lesser included offense, that conviction of a lesser included offense constitutes an acquittal of the greater crime, *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975), that there is no way of knowing which guilty verdict was first reached, that U.J.I.Crim. 50.01 was designed to avoid this problem, that the giving of his requested instruction would have avoided the problem, and refusal of the instruction prejudiced defendant because if the jury first found defendant guilty of the assault charge, he was thereby acquitted of the battery charge.

This argument overlooks the fact, that by definition, the lesser included offense concept is determined by looking to the offenses charged in the indictment. *State v. Sandoval*, supra; *State v. Medina*, supra. Defendant attempts to apply the lesser included concept, not to the offenses charged in the indictment, but to the offenses to be submitted to the jury at the close of the evidence and as limited by the evidence. The double jeopardy concern at the time the requested instruction was refused was not with a previous conviction or acquittal, see *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975), because neither has occurred. The double jeopardy concern was to prevent multiple punishment for one offense "when multiple charges are brought in a single

trial." *State v. Sandoval, supra.* This involves the concept of merger, and merger was the applicable concept at this point in the trial.

While the giving of the requested instruction would have avoided guilty verdicts on multiple charges that merged under the evidence, the failure to give the instruction is not error in the absence of prejudice to the defendant. Defendant was not prejudiced by a verdict on the aggravated battery charge because under his requested instruction, the jury was to decide that charge before considering the aggravated assault charge. Since the verdict on the aggravated battery charge was "guilty", under the requested instruction there would have been no verdict on the aggravated assault charge.

 Second, defendant asserts prejudice in that collateral consequences may flow from the fact of a conviction, apart from any sentence. He relies on *Padilla v. State*, 90 N.M. 664, 568 P.2d 190 (1977) which states "that a 'conviction' refers to a finding of guilt and does not include the imposition of a sentence." We agree, but defendant is incorrect when he states that because of two guilty verdicts, there have been two "convictions."

Section 40A–1–11, N.M.S.A.1953 (2d Repl. Vol. 6) states: "No person shall be convicted of a crime unless found guilty by the verdict of the jury, accepted and recorded by the court". "[A]n express adjudication of conviction, or finding of guilt, is not necessary if it is apparent from other matters in the record that the court made a judicial determination of conviction or guilt." *State v. Apodaca*, 80 N.M. 155, 452 P.2d 489 (Ct.App.1969); compare *Nance v. State*, 80 N.M. 123, 452 P.2d 192 (Ct.App. 1969).

The amended judgment recites there were two convictions "pursuant to a jury verdict". However the amended judgment also recites: "[T]he Court having found that said offenses merge; . . . Defendant . . . is hereby found and adjudged guilty and convicted of the merged crime" of aggravated battery with a deadly weapon.

It is apparent from the record that the judicial determination of guilt was for one offense only. This determination was correct because the determination that the offenses merged was a determination that only "one offense has occurred". See *State v. Sandoval, supra.*

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.