629 P.2d 1216

**STATE of New Mexico, Petitioner,**

v.

**Norman ELLENBERGER, Respondent.**

**No. 13449.**

Supreme Court of New Mexico.

May 21, 1981.

Jeff Bingaman, Atty. Gen., Fred Chris Smith, Stephen J. Westheimer, Asst. Attys. Gen., Santa Fe, for petitioner.

Leon Taylor, Albuquerque, for respondent.

Eloy F. Martinez, Dist. Atty., Santa Fe, amicus curiae.

## OPINION

EASLEY, Chief Justice.

Norman Ellenberger was indicted by a grand jury on ten counts of fraud in excess of $100 in violation of Section 30–16–6, N.M.S.A. 1978, and twelve counts of making false public vouchers contrary to Section 30–23–3, N.M.S.A. 1978. The trial court dismissed all the charges involving alleged false vouchers. The State filed an interlocutory appeal as to dismissal of those counts to the Court of Appeals, which affirmed. We granted certiorari and reverse.

The issues are whether Ellenberger is within the class of persons subject to the provisions of Section 30–23–3, which makes the filing of a false public voucher a felony, and whether the false voucher charges are merged with the fraud charges.

Ellenberger is the former head coach of the University of New Mexico men's basketball team. While so employed, Ellenberger allegedly made twelve false travel vouchers for which he received nine separate checks. The nine counts of fraud are based upon the receipt of the money from

the twelve false vouchers. The trial court ruled that Ellenberger was not a "public official" and that Section 30–23–3 did not apply to him and further held that the two sets of charges were merged. The Court of Appeals affirmed the decision that the statute did not apply to Ellenberger but did not reach the merger issue.

1. *Whether Section 30–23–3 Applies to a State University Head Coach.*

The Section provides:

Making or permitting false public voucher consists of knowingly, intentionally or willfully making, causing to be made or permitting to be made, a false material statement or forged signature upon any public voucher, or invoice supporting a public voucher, with intent that the voucher or invoice shall be relied upon for the expenditure of public money.

Whoever commits making or permitting false public voucher is guilty of a fourth degree felony.

This statute is part of an article headed "Misconduct by Officials". While nothing on the face of the statute would limit its application to public officials, the Court of Appeals, relying on its opinion in *State v. Thurman*, 88 N.M. 31, 536 P.2d 1087 (Ct. App.1975), *cert. denied*, 88 N.M. 29, 536 P.2d 1085 (1975), held that the legislatively-enacted heading to the article revealed a legislative intent that the statute apply only to public officials and hence would not apply to a public employee.

■■ While we agree with the Court of Appeals that a legislatively-enacted heading may be useful in the effort to resolve ambiguities in the meaning of a doubtful statute, *American Automobile Ass'n, Inc. v. Bureau of Rev.*, 88 N.M. 148, 538 P.2d 420 (Ct.App.1975), *rev'd on other grounds*, 88 N.M. 462, 541 P.2d 967 (1975), it is not the business of the courts to look beyond the plain meaning of the words of a clearly drafted statute in an attempt to divine the intent of the Legislature. As this Court stated in *State ex rel. Barela v. New Mexico State Bd. of Ed.*, 80 N.M. 220, 222, 453 P.2d 583, 585 (1969), "[w]e are not permitted to read into a statute language which is not there, particularly, if it makes sense as written." We agree with the following statement of the rule:

The rule which permits reading the title of an act in aid of statutory construction applies only in cases where the legislative meaning is left in doubt by failure to clearly express it in the law. *Moreover, the ambiguity which justifies a resort to the title must arise in the body of the act; an ambiguity arising from the title is not sufficient.* * * * The title of an act cannot limit the plain meeting of the text.* * * The title is not conclusive in regard to the meaning of a statute.

73 Am.Jur.2d, *Statutes*, § 98 (1974) (emphasis added and footnotes omitted). Thus the starting point of statutory analysis must always be the statute itself which represents the primary expression of the intent of the Legislature. The heading to an article represents little more than a convenient tag to an organizational grouping of statutes; it therefore cannot be used to create an ambiguity in an otherwise clear expression of the intent of the Legislature. *See Hewatt v. Clark*, 44 N.M. 453, 103 P.2d 646 (1940).

■ We now proceed to an examination of the language of the statute. The first sentence sets forth the elements of the crime of making or permitting false public voucher and contains no language which could possibly be construed as limiting its application to a certain class of persons. The second sentence declares that *"[w]hoever commits [this crime] is guilty of a fourth degree felony."* The Court of Appeals found it significant that the statute as originally enacted began with "[a]ny person who." 1959 N.M. Laws, ch. 11, § 3. The statute was amended to its present language in the recodification of the Criminal Code in 1963, at which time it was grouped with other, related statutes into the present Article 23. 1963 N.M.Laws, ch. 303. We fail to see the significance of the change from "[a]ny person who" to "[w]hoever." Webster's Third New International Dictionary (1971) defines "whoever" as "whatever person: any person at all that: no matter

who * * *." There could be no clearer statement of an intent that the statute apply to anyone who commits the acts proscribed therein. We therefore conclude that the statute is unambiguous and applies to public employees as well as public officials.

Even if we assume for the sake of argument that the statute is ambiguous and statutory construction is appropriate, we reach the same conclusion. The apparent restrictiveness of the heading to the article, "Misconduct by Officials", is tempered by the language of the statutes found therein. Several of the statutes, including the very first sentence of the first statute after the title, specifically include public employees within their terms. §§ 30–23–1, 30–23–2, 30–23–5, 30–23–6 and 30–23–7, N.M.S.A. 1978. The explicit extension of the statutes beyond the apparent limitations of the act's heading indicates that the heading is intended merely as a convenient description rather than as a limitation of the scope of the statutes found therein.

At this point it is appropriate to note that Ellenberger's contention that under N.M. Const., Art. IV, § 16, the scope of an act *cannot* exceed its title, is without merit. That provision relates to the title of a bill presented to the Legislature and its primary purpose is to prevent fraud or surprise upon the Legislature because of concealed or hidden provisions in an act which the title fails to express. *City of Raton v. Sproule,* 78 N.M. 138, 429 P.2d 336 (1967). That is not the situation here, and "Misconduct by Officials" was not the title of the bill by which this statute was enacted. Rather, this heading to article 23 was merely the title given to a new grouping of statutes effected by the 1963 recodification and revision of the Criminal Code. 1963 N.M.Laws, ch. 303.

■ Finally, we observe the familiar rule that where a statute is ambiguous, the Court will construe the statute in a manner which will not render its application absurd or unreasonable and which will not defeat the object of the Legislature. *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 568 P.2d 1236 (1977). The evil which the Legislature sought to punish by Section 30–23–3 was the use of false public vouchers to wrongfully obtain public money. This evil can be perpetrated by officials, public officials, employees, and head coaches alike. Limiting the application of the statute to only a few persons at the top of the bureaucracy would accord with neither common sense nor reason and could only serve to defeat the object of the Legislature. We will not adopt such a strained construction, absent a clear indication that that was the Legislature's intent.

■ We hold that the trial court erred in dismissing the twelve counts of making false public vouchers. *State v. Thurman, supra,* is overruled to the extent that it is inconsistent herewith.

## 2. *Whether the Offenses Merged.*

The trial court also dismissed the counts of making or permitting false public voucher on the basis that those counts merged with the fraud counts which arose out of the same criminal acts. The Court of Appeals found it unnecessary to reach this issue. In view of our disposition of the first issue in this appeal, we must determine whether the trial court's action may yet be sustained on this alternative ground.

The doctrine of merger is based upon the constitutional guarantee against double jeopardy contained in the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution. The scope of the double jeopardy clause was outlined by the Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969):

> That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a *second prosecution* for the same offense after acquittal. It protects against a *second prosecution* for the same offense after conviction. And it protects against *multiple punishments* for the same offense. (Footnotes omitted and emphasis added.)

Neither the first nor the second protection is involved here as there has been no prior prosecution of Ellenberger on any of these charges. Any contention that imposition of consecutive sentences for both fraud and making false public voucher arising out of the same act would constitute multiple punishment is premature. Ellenberger has not been convicted of any of the charges, much less sentenced.

We find nothing in the double jeopardy clause, the New Mexico statutes, or prior case law which would prohibit the State from charging and trying Ellenberger for violations of every criminal statute which the State has sufficient grounds to believe he has violated. We note that in *State v. Quintana*, 69 N.M. 51, 364 P.2d 120 (1961), in which this Court held that the offenses of armed robbery and larceny arising out of the same criminal transaction merged and that imposition of consecutive sentences for the two crimes was therefore impermissible multiple punishment, the Court nonetheless stated that "[t]he defendant was *properly convicted* on both armed robbery and grand larceny . . . ." *Id.* at 59, 364 P.2d at 125 (emphasis added).

Since the issue is not properly before us at this time, we express no opinion on whether the imposition of consecutive sentences for fraud and making false public voucher would violate the double jeopardy clause guarantee against multiple punishments for the same offense.

█ We note, however, that this question is primarily one of legislative intent. Multiple punishments run afoul of the double jeopardy clause only where the Legislature has not authorized multiple punishments. *See United States v. DiFrancesco*, —— U.S. ——, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). Mr. Justice Blackmun, concurring in *Whalen*, 445 U.S. at 697, 100 S.Ct. at 1441, stated, "[t]he *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended." Since the question turns on the intent of the Legislature, the "same evidence" and "necessarily involved" tests previously utilized by this Court are not constitutional litmus tests, but are merely aids for determining legislative intent.

 We find no constitutional or statutory bar to charging Ellenberger with violations of Section 30–23–3, relating to the making of false public vouchers, and Section 30–16–6, relating to fraud. The trial court therefore erred in dismissing the twelve counts of making false public voucher on the basis that those counts merged with the fraud counts.

The cause is reversed and remanded for trial.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, FEDERICI and RIORDAN, JJ., concur.